UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- x

PETER PROTENTIS,

                          Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

---------------------------------------------------------------- x

**MEMORANDUM AND ORDER**

No. 23-CV-3114-JRC

JAMES R. CHO, United States Magistrate Judge:

    Plaintiff Peter Protentis ("plaintiff") brings this action seeking judicial review of a final determination by the Commissioner of the Social Security Administration (the "Commissioner") denying his application for disability insurance benefits. *See* Compl., Dkt. 1. Currently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *See* Pl.'s Mot. for J. on the Pleadings, Dkt. 8; Def.'s Mot. for J. on the Pleadings, Dkt. 9. Plaintiff seeks an order remanding this matter for further administrative proceedings, while the Commissioner requests that the Court affirm the denial of benefits. With the parties' consent, this action was assigned to the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c). *See* Dkts. 5, 6. For the reasons set forth below, this Court grants plaintiff's motion, denies the Commissioner's cross-motion, and remands the case for further proceedings.

## Background

    On May 13, 2021, plaintiff applied for disability insurance benefits, alleging disability beginning on March 28, 2020. *See* Administrative Record ("Tr.") at 164-73, Dkt. 7. The Commissioner denied plaintiff's application on June 16, 2021, and upon reconsideration on

September 27, 2021.  *Id.* at 76-102.  At plaintiff's request, on January 14, 2022, Administrative Law Judge Jason A. Miller held a hearing at which plaintiff appeared with counsel and testified, as well as a vocational expert.  *Id.* at 28-49.  Following the hearing, the ALJ sent interrogatories to the vocational expert and to a medical expert, both of whom responded.  *Id.* at 257-65, 414-41. On March 23, 2022, the ALJ issued a decision finding that plaintiff was not disabled and denied his claim.  *Id.* at 7-24.  On April 6, 2023, the Appeals Council denied plaintiff's request for review, rendering the ALJ's decision final.  *Id.* at 1-6.  On April 25, 2023, plaintiff timely filed this action.  *See* Dkt. 1.

## I.    Administrative Record

### A.    Plaintiff's Application and Testimony

Plaintiff was born in 1977, and is a high school graduate with an associate degree.  *Id.* at 33, 35.  Plaintiff worked for the New York City Sanitation Department as a garbage collector for 20 years.  *Id.* at 34-35.  In March 2020, plaintiff retired due to job-related injuries to his neck and back, and receives a regular retirement pension from New York City in the amount of $5,000 per month.  *Id.* at 34, 37.  In March 2021, plaintiff attempted to work in the mortgage industry, but had to stop after four weeks because of pain.  *Id.* at 36-37.

In applying for disability insurance benefits, plaintiff listed spinal disease, bilateral knee injuries, bilateral elbow injuries, and bilateral hand injuries as the disabling conditions.  *Id.* at 184.  In a pain questionnaire dated May 25, 2021, plaintiff reported neck and low back pain radiating to the right leg, since March 2020.  *Id.* at 192.  He described the pain as "sharp" and "constant," and walking and bending over aggravated the pain.  *Id.* at 192-93.  He was taking oxycodone three times per day since March 2020, but it only helped "a little" and sometimes made him tired.  *Id.* at 193, 202.  He reported that "it is hard to do any" daily activities "due to

the [p]ain," and he is limited to "minor walking." *Id.* at 193. He was "unable to do physical activities for the most part." *Id.*

In a function report, also dated May 25, 2021, plaintiff further reported that he was "in constant [p]ain, cannot walk for more than a couple of minutes, cannot bend over [and] cannot sit for too long." *Id.* at 195. Plaintiff stated that he "lay [sic] around most of the time." *Id.* at 196. His condition affects his ability to dress, bathe and use the toilet. *Id.* He is unable to cook, perform house/yard work or take care of his son. *Id.* at 196-97. He was able to drive and went out two to three times per week. *Id.* at 198. He was able to go out alone, but needed to be accompanied "sometimes if the pain is really bad that day." *Id.* at 199. He shopped by computer for 30 minutes per week. *Id.* at 198. He had difficulty counting change due to pain in his hands. *Id.*

Plaintiff could walk between one-half and one block. *Id.* at 200. Generally, he could only pay attention for a couple of minutes at a time and could not finish what he started. *Id.* He did not use any assistive devices to ambulate. *Id.* at 201. He was unable to lift, squat, bend, stand, reach, sit, or climb stairs. *Id.* at 200. However, he did not check-off on the form that using his hands was affected by his condition. *Id.*

At the January 2022 hearing, plaintiff testified that he lives with his wife and mother, who take care of all the household chores, in addition to childcare. Tr. at 34, 38-39. Plaintiff spends virtually the entire day reading and watching television. *Id.* at 38-39. Due to neck pain, he cannot turn his head fully so his wife does the driving. *Id.* at 35, 41. Plaintiff cannot walk more than two or three blocks. *Id.* at 40. Pain in his hands makes manual activity difficult, particularly with his right hand. *Id.* As to treatment, he has been prescribed oxycodone at a dosage of 30 milligrams, three times per day, received injections and physical therapy, and he is

3

considering back surgery.  *Id.* at 37-38.  Plaintiff testified that his primary care doctor, not his orthopedist, prescribed oxycodone.  *Id.*[1]

### B.    Medical Sources

#### 1.    Dr. Daniel Wilen, Treating Orthopedist

Plaintiff originally saw Dr. Daniel Wilen, an orthopedist, in 2007 for left hand pain, and in 2009 for right knee pain, but there is no record of treatment regarding those conditions during the relevant period.  *Id.* at 320-29.[2]

Following another workplace injury in February 2012, plaintiff saw Dr. Wilen for low back pain several times between March 2012 and May 2013.  *Id.* at 269-95, 312-17, 330-47.  At that time, MRIs of the lumbar region showed abnormalities, including lumbar straightening and an L4/5 disc bulge.  *Id.* at 276-77, 293-95, 318-19, 345-47.

After another workplace incident, plaintiff visited Dr. Wilen on April 23, 2020, complaining of frequent pain, tenderness and spasms in the thoracic spine, lumbar spine, and right hip.  *Id.* at 296-97.  Dr. Wilen noted that upon examination of the lumbar spine, plaintiff had reduced range of motion:  active flexion and extension to 60 degrees and active lateral flexion to 20 degrees left and right.  *Id.* at 297.  X-rays showed signs of lumbar and thoracic spasm.  *Id.* at 297, 304.  Plaintiff also complained of swelling, crepitus, and instability of the right hip, and had 4/5 right hip strength.  *Id.* at 297.  Dr. Wilen recommended that plaintiff undergo thoracic spine, lumbar spine and hip MRIs and return in two weeks.  *Id.* at 297.

A May 17, 2020 lumbar spine MRI showed a disc herniation at L5/S1 and disc bulges at

---

[1] In his application for benefits, and his appeal of the initial denial of benefits, plaintiff stated that Dr. Wilen prescribed oxycodone.  *Id.* at 186-87, 217-18.

[2] Regarding the hand injury, plaintiff reported that he "crushed his thumb on a garbage truck and suffered a fracture to the left thumb."  *Id.* at 320.  Regarding the knee injury, plaintiff had reported pain and limited motion.  *Id.* at 328.

L2/3, L3/4 and L4/5 and lumbar straightening.  *Id.* at 302, 305-06.  Plaintiff returned to Dr. Wilen on May 21, 2020 and an examination of the lumbar spine showed tenderness and muscle spasm.  *Id.* at 298-300.  Dr. Wilen noted reduced range of motion on examination of the right hip:  plaintiff had passive flexion to 80 degrees, as well as passive extension, abduction, adduction, internal rotation, and external rotation to 20 degrees.  *Id.* at 299.  Dr. Wilen again advised plaintiff to have a thoracic spine MRI and to follow up in two weeks.  *Id.* at 300.

On May 13, 2021, plaintiff reported to Dr. Wilen pain in the entire spine.  *Id.* at 307-09. While plaintiff said his low back pain had improved, his neck pain was the same.  *Id.* at 307.  Dr. Wilen noted tenderness of the cervical spine and lumbar spine, and reduced range of motion of the cervical spine:  active flexion, active rotation to the right, and active lateral flexion to the left to 30 degrees; and active flexion, active rotation to the left, and active lateral flexion to the right to 20 degrees.  *Id.* at 308.  X-rays of the cervical spine, thoracic spine and lumbar spine showed spasms.  *Id.* at 308-09.  Dr. Wilen advised plaintiff to have a cervical MRI, take NSAIDs as needed, and follow up in two weeks.  *Id.* at 308.

In June 2021, a series of cervical, lumbar and thoracic MRIs showed disc herniations at C3/4, C4/5, C5/6, L5/S1; and bulges at C2/3, C6/7, T3/4, T4/5, L2/3, L3/4, L4/5; as well as straightening of the cervical and lumbar spines.  *Id.* at 372-79.

On July 22, 2021, plaintiff reported an increase in pain, tenderness and swelling in his entire spine since his last visit.  *Id.* at 368-70.  Cervical, thoracic and lumbar x-rays again showed spasms.  *Id.* at 371.  Dr. Wilen administered a corticosteroid lumbar spine injection to reduce pain and inflammation and advised plaintiff to take NSAIDs as needed and follow up in two weeks.  *Id.* at 369-70.

On September 9, 2021, plaintiff again saw Dr. Wilen, who advised him to start physical

therapy, take NSAIDs as needed, and follow up in two weeks. *Id.* at 387-89.

On October 14, 2021, plaintiff visited Dr. Wilen. Dr. Wilen referred plaintiff for electrodiagnostic testing and instructed him to take NSAIDS as needed, and to follow up in two weeks. *Id.* at 390-92.

On October 20, 2021, plaintiff underwent electrodiagnostic studies. An EMG/nerve conduction study of the upper extremities and cervical paraspinal muscles demonstrated right greater than left C5-6 radiculopathy with denervation in the paraspinal muscles; and right median neuropathy at the wrist with prolonged evoked responses (carpal tunnel syndrome). *Id.* at 402. A study of the lower extremities and lumbar paraspinal muscles demonstrated right greater than left L4-5 radiculopathy with denervation of the paraspinal muscles. *Id.*

On November 18, 2021, Dr. Wilen advised plaintiff to continue physical therapy, take NSAIDs as needed, and follow up in two weeks. *Id.* at 393-95. On December 16, 2021, Dr. Wilen again advised plaintiff to take NSAIDs as needed and return in two weeks. *Id.* at 396-98.

Also on December 16, 2021, Dr. Wilen completed a medical source statement in support of plaintiff's application for disability benefits. *Id.* at 412-13. In the form, Dr. Wilen indicated that plaintiff had herniated cervical, lumbar and thoracic discs, as well as cervical and lumbar radiculopathy. *Id.* at 412. Dr. Wilen further noted that plaintiff could lift only less than ten pounds, stand and/or walk about two hours per day, sit for less than four hours per day, occasionally use his hands for fine and gross motor activity, and occasionally reach in all directions. *Id.* at 412-13. He further advised that plaintiff could not engage in bending or stooping. *Id.* at 413.

On December 23, 2021, Dr. Wilen again advised plaintiff to take NSAIDs as needed and return in two weeks. *Id.* at 399-401.

## 2.      Dr. Silvia Aguiar, Internal Medicine Consultative Examiner

Meanwhile, on September 9, 2021, plaintiff saw Dr. Silvia Aguiar, an internist, for a consultative examination in connection with plaintiff's application for benefits.  Plaintiff's primary complaint was lower back pain, radiating to his right leg, which he rated 9/10.  *Id.* at 381.  Plaintiff explained that the pain was aggravated by walking and standing for prolonged periods of time.  *Id.*  Plaintiff reported that he went to physical therapy twice per week and received "epidural injections," although they did not help.  *Id.*[3]  He also advised that he was taking naproxen and oxycodone.  *Id.* at 381.  Upon Dr. Aguiar's examination, she found that plaintiff had normal, unassisted gait and station, full ranges of motion, full strength, and intact sensation and reflexes.  *Id.* at 382-83.  Dr. Aguiar diagnosed plaintiff with low back pain and opined that plaintiff had no physical limitations.  *Id.* at 383.

## 3.      Dr. R. Pradhan and Dr. S. Powell, State Agency Medical Consultants

On June 14, 2021, Dr. R. Pradhan, an internist, issued medical findings based on a review of a limited record.  Dr. Pradhan opined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently.  *Id.* at 54-55.  Plaintiff was able to stand/walk or sit about six hours per day.  *Id.* 55.  Plaintiff could occasionally climb, balance, stoop, kneel, crouch and crawl.  *Id.* He had no manipulative, communicative, visual or environmental limitations.  *Id.* at 56.

On September 20, 2021, Dr. S. Powell, an internist, also issued medical findings based on a review of updated records, including the cervical, lumbar and thoracic MRIs performed on July 22, 2021, as well as the examination findings of Dr. Wilen and Dr. Aguiar.  *Id.* at 68-69. According to Dr. Powell, plaintiff could lift/carry 20 pounds occasionally and 10 pounds

---

[3] The Commissioner correctly notes that the medical records show only one injection and no physical therapy notes. *See* Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings ("Def. Mem.") at 19, Dkt. 9-1.

frequently. *Id.* at 68. Plaintiff could stand/walk or sit for six hours per day. *Id.* He also found no postural or manipulative limitations. *Id.* at 68-69.

### 4. Dr. Zack Stearns, Non-examining Orthopedic Expert

On February 4, 2022, Dr. Zack Stearns, an impartial orthopedic surgeon, responded to interrogatories issued by the ALJ, after the hearing. Dr. Stearns opined that plaintiff's impairments consisted of neck pain, back pain, low back pain, cervical and lumbar degenerative disc disease with disc herniations, and foraminal stenosis. *Id.* at 433. Dr. Stearns noted that EMG evidence suggests radiculopathy and neuropathy. *Id.* at 433. However, Dr. Stearns observed that plaintiff's medical history did not suggest radicular symptoms and that the only thorough examination in the record was conducted by Dr. Aguiar, who found a normal gait, no assistive devices, full squat, and no loss of strength in the upper and lower extremities. *Id.* at 434.

Upon review of the records, Dr. Stearns found that they did not indicate any "objective functional impairments of [the] upper or lower extremities." *Id.* According to Dr. Stearns, plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently. *Id.* at 436. Plaintiff could stand or walk for about four hours per day and sit for about six hours per day. *Id.* at 437. He could continuously reach, handle, finger, feel, push/pull, and operate foot controls. *Id.* at 438. Plaintiff could not climb ladders/scaffolds, but could occasionally stoop, kneel, crouch, and crawl and frequently balance and climb stairs/ramps. *Id.* at 439. Dr. Stearns explained that these limitations are based on significant degenerative disc changes with multilevel foraminal stenosis. *Id.* at 435-36, 439-40. Dr. Stearns concluded that the MRIs and EMG results "suggest a moderate risk of developing radicular symptoms should the conditions progress, but the absence of clinical findings on exam[ination] would not suggest the need for any invasive treatment at

this time." *Id.* at 435.

## II.   ALJ Decision

A claimant must be "disabled" within the meaning of the Social Security Act ("SSA") to receive disability benefits. *See* 42 U.S.C. § 423(a), (d).  To be eligible for such benefits, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see Schillo v. Kijakazi*, 31 F.4th 64, 69-70 (2d Cir. 2022). In reviewing a claim, the ALJ must engage in a five-step sequential analysis, proscribed by 20 C.F.R. § 404.1520(a)(4)(i)-(v).  First, the ALJ determines whether the plaintiff is currently engaged in "substantial gainful activity."  20 C.F.R. § 416.920(a)(4)(i); *see Schillo*, 31 F.4th at 70.  If he is not, the ALJ proceeds to the second step to determine whether the plaintiff suffers from a "severe impairment," that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); *see Schillo*, 31 F.4th at 70.  If the plaintiff does suffer from an impairment that is severe, the ALJ proceeds to the third step whether the impairment meets or equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  *See* 20 C.F.R. § 416.920(a)(4)(iii); *Schillo*, 31 F.4th at 70.  If the claimant has a listed impairment, the ALJ will find that the plaintiff is disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not have a listed impairment, the ALJ must determine the claimant's residual functional capacity ("RFC") before continuing to steps four and five.  To determine the plaintiff's RFC, the ALJ must consider the plaintiff's "impairment(s), and any related symptoms, [that] may cause physical and mental limitations that affect what [the plaintiff] can do in a work

setting." 20 C.F.R. § 416.945(a)(1).  Using the RFC, the ALJ will then determine if the plaintiff

can perform past relevant work.  *Id.* § 416.920(a)(4)(iv).  If the claimant is unable to perform

past relevant work, the ALJ will proceed to step five and determine whether plaintiff, given his

RFC, can perform other work.  *Id.* § 416.920(a)(4)(v).  If the answer is yes, the claimant is not

disabled; if the answer is no, the claimant is disabled and is entitled to receive benefits.  *Id.*

"The claimant bears the burden of proof in the first four steps of the sequential inquiry."

*Schillo*, 31 F.4th at 70 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)).  At step five,

"the burden shifts, to a limited extent, to the Commissioner to show that other work exists in

significant numbers in the national economy that the claimant can do."  *Schillo*, 31 F.4th at 70;

*see* 20 C.F.R. § 404.1560(c)(2).  "In making these determinations, the Commissioner 'must

consider four factors (1) the objective medical facts; (2) diagnosis or medical opinions based on

such facts; (3) subjective evidence of pain or disability testified to by the claimant or others;

[and] (4) the claimant's educational background, age, and work experience.'"  *Ayala v. Comm'r

of Soc. Sec.*, No. 20-CV-2596, 2024 WL 1174286, at *8 (E.D.N.Y. Mar. 19, 2024) (quoting

*Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)).

On March 23, 2022, the ALJ issued his decision, finding that plaintiff was not disabled

for purposes of the SSA and did not qualify for benefits.  At step one, the ALJ found that

plaintiff had not performed substantial gainful activity since March 28, 2020, the alleged onset

date.[4]  Tr. at 13.  At step two, the ALJ found that plaintiff had the severe impairments of

degenerative disc disease of the cervical and lumbar spine with radiculopathy, documented by

---

[4] Although plaintiff worked briefly at a mortgage company after the alleged onset date, the ALJ found that this was an unsuccessful work attempt because it lasted for less than six months and plaintiff stopped due to his injury.  Tr. at 13.

MRIs of the spine and abnormal electrodiagnostic testing.[5]  *Id.* at 13.  At step three, the ALJ determined that plaintiff's alleged cervical and lumbar impairments did not medically equal the severity of one of the listed impairments.  *Id.* at 14.[6]

The ALJ proceeded to step four and concluded that plaintiff retained the RFC to perform a range of light work as defined by 20 C.F.R. § 404.1567(b).[7]  In fact, the ALJ adopted the same degree of limitations as those determined by Dr. Stearns.  The ALJ concluded that although plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  *Id.* at 16.  In other words, "objective medical evidence of record . . . does not show a sufficient number of abnormal clinical examination findings that would suggest greater restrictions than those arrived at in the [RFC]."  *Id.* at 15.  For example, "the claimant has no significant gait abnormality in the case record, no requirement for any assistive device for ambulation, and no significant loss of motor function in the upper or lower extremities."  *Id.* at 16.  The ALJ further found that the level of pain described by plaintiff "is not

---

[5] The ALJ noted that plaintiff also alleged disability due to bilateral knee, elbow, and hand injuries.  Tr. at 13.  However, the ALJ found that an impairment of the hands was not "severe," relying on Dr. Aguiar's finding that plaintiff had normal fine motor activity.  *Id.* at 13.  The ALJ also found there was no medically determinable impairment of the knee and elbows.  *Id.* at 14.

[6] Specifically, the ALJ found that plaintiff did not satisfy "paragraph D," which requires the documented need for a "walker, bilateral canes, or bilateral crutches or a wheeled and seated mobility device involving the use of both hands."  *Id.*

[7] According to the applicable regulations, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).  Specifically, the ALJ found that plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can sit, with normal breaks, for a total of 6 hours per 8-hour workday and can stand for 4 hours and walk for 4 hours per 8-hour workday.  Further, he can never climb ladders or scaffolds, can occasionally stoop, kneel, crouch, or crawl, and can frequently climb ramps and stairs or balance.  Tr. at 14.

reflected in functional loss." *Id.* at 17.  The ALJ recognized that plaintiff has a "strong work history," and testified that he engages in "limited daily activities"; however, the ALJ found that "the lack of significant gait or motor function abnormalities, as well as routine and conservative course of treatment and medication regimen, do not support [plaintiff's] hearing testimony to the extent that greater limitations are warranted in the [RFC]." *Id.*

As required by the applicable regulations, the ALJ considered the medical opinions of various doctors and analyzed the persuasiveness of each.  Dr. Aguiar found that plaintiff had no abnormalities with regard to his general appearance, gait or station, or musculoskeletal or neurologic systems, and thus concluded that plaintiff had "no physical limitations." *Id.* at 382-83.  However, the ALJ rejected Dr. Aguiar's opinion as "not persuasive" and "not consistent with or supported by the record in its entirety." *Id.* at 18.  Contrary to Dr. Aguiar's opinion, the ALJ found that "objective diagnostic imaging" and "electrodiagnostic testing" show that plaintiff has "at least some degree of severe physical impairments causing more than minimal impact upon his daily functioning." *Id.*

The ALJ further discussed the opinions of two reviewing state agency doctors, Dr. Pradhan and Dr. Powell.  Dr. Pradhan found plaintiff able to perform light work, with limitations to occasional postural activity. *Id.* at 54-55.  Dr. Powell found plaintiff was capable of the full range of light exertion.[8] *Id.* at 68.  However, the ALJ found that these opinions are also not "consistent with or supported by the record as a whole." *Id.* at 18.  Specifically, the ALJ noted that Dr. Pradhan's opinion was not based on a complete record. *Id.*

Further, the ALJ found that Dr. Powell relied heavily on the findings of Dr. Aguiar's consultative examination, which the ALJ previously determined was inconsistent with the record

---

[8] Dr. Powell's report explains that plaintiff was sent for a consultative exam because "[t]he evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim."  Tr. at 65.

in its entirety.  *Id.*  Finally, the ALJ had received additional evidence since the preparation of the

state agency assessments, which made those remote assessments inconsistent with the record as a

whole.  *Id.*

The ALJ found that the opinion of plaintiff's treating orthopedist, Dr. Wilen, was

unpersuasive.  *Id.*  Dr. Wilen had opined that plaintiff was limited to sedentary work, without the

capacity to sit, stand, or walk, for a combined total of 8 hours per 8-hour workday, and without

the ability to lift and/or carry 10 pounds occasionally.  Although the ALJ conceded that Dr.

Wilen's opinion had "some support for his limitations in the objective evidence, including

abnormal diagnostic imaging and electrodiagnostic testing[,]" the ALJ found that there were no

significant physical examination findings or neurologic deficits with respect to fine motor

activity of the hands, gait, station, motor strength, sensation and reflexes.  *Id.* at 18-19.  In

addition, the ALJ found that Dr. Wilen's opinion was inconsistent with the lack of surgical

intervention and emergency room visits.  *Id.* at 19.

Finally, the ALJ found the opinion of Dr. Stearns "persuasive because it is consistent

with and supported by the evidence of record."  *Id.* at 19.  Dr. Stearns had concluded that

plaintiff could perform a wide range of light exertion.  *Id.*  The ALJ noted that Dr. Stearns was

the only medical source who reviewed the entire medical record.  *Id.*  According to the ALJ, Dr.

Stearns accounted for the limitations that might be expected based on plaintiff's diagnostic

imaging and electrodiagnostic testing, while relying on the "generally normal physical

examination findings . . . and the claimant's conservative course of treatment."  *Id.*

At step five, the ALJ further found that since plaintiff could perform light work, there

were various widely available jobs that plaintiff could perform.  *Id.* at 20-21.  Accordingly, the

ALJ determined that plaintiff was not disabled.

## Discussion

### I.      Legal Standards

A motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure should be granted if it is clear from the pleadings that "the moving party is entitled to judgment as a matter of law." *Burns Int'l Sec. Servs., Inc. v. Int'l Union United Plant Guard Workers of Am. (UPGWA) and its Local 537*, 47 F.3d 14, 16 (2d Cir. 1995).  The Court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," remand for further development of the record is appropriate. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) (internal quotation marks and citation omitted).

Unsuccessful claimants for benefits under the SSA may bring an action in federal district court seeking judicial review of the Commissioner's denial of benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  In reviewing a final decision of the Commissioner, a district court may set aside a determination "only if it is based upon legal error or if the factual findings are not supported by substantial evidence in the record as a whole." *Greek v. Colvin*, 802 F.3d 374-75 (2d Cir. 2015) (citations omitted); *see* 42 U.S.C. § 405(g).  "Substantial evidence [means] more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (internal quotation marks and citation omitted).  The reviewing court does not decide the case *de novo*; the factual findings of the Commissioner are final if supported by substantial evidence. *See Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002)

14

("Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, we will not substitute our judgment for that of the Commissioner.").

"[T]he social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal quotation marks omitted). Accordingly, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 111 (2000). In fact, the applicable regulations require the ALJ to develop a claimant's complete medical history. *Pratts*, 94 F.3d at 37 (citing 20 C.F.R. §§ 404.1512(d)–(f)). "This responsibility encompasses not only the duty to obtain a claimant's medical records and reports but also the duty to question the claimant adequately about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 577 (S.D.N.Y. 2022) (citations omitted). If the ALJ fails to adequately develop the record, remand is appropriate. *See Moran*, 569 F.3d at 114-15.

First, plaintiff contends that the ALJ gave too little weight to the opinion of plaintiff's treating orthopedist, Dr. Wilen. *See* Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings at 12-14, Dkt. 8-1. Second, plaintiff alleges that the ALJ should have sought clarification from Dr. Wilen or ordered another consultative examination because the ALJ found that Dr. Wilen's opinion lacked an adequate foundation. *See id.* at 12-13. Third, plaintiff further argues that the ALJ improperly relied on the opinion of Dr. Stearns, who never examined plaintiff and based his opinion on the report of Dr. Aguiar, which the ALJ had otherwise rejected. *See id.* at 14-15.

15

II.     **Evaluation of Medical Opinions**

A.     **The ALJ erred in giving insufficient weight to the opinion
of Dr. Wilen and/or failing to develop the record**

As an initial matter, in January 2017, the Commissioner promulgated new regulations

regarding the consideration of medical opinion evidence that apply to claims filed on or after

March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  Since plaintiff's application for benefits was filed

on May 13, 2021, the new regulations govern the review of his application.  Under the old

regulations, an ALJ was required to give "controlling weight" to a treating physician's opinion

so long as that opinion "is well-supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case

record."  *Schillo*, 31 F.4th at 71.

Under the new regulations, the Commissioner "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s), including those from [a claimant's] medical sources."  *Id.* at

71 n.1 (quoting 20 C.F.R. § 404.1520c(a)).  Instead, in evaluating the persuasiveness of various

medical opinions, the Commissioner considers the following factors:  (1) supportability; (2)

consistency; (3) relationship of the source with the claimant, including length of the treatment

relationship, and whether the relationship is an examining relationship; (4) the medical source's

specialization; and (5) other factors, including but not limited to "evidence showing a medical

source has familiarity with the other evidence in the claim or an understanding of [the SSA]

disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c).

Consistency and supportability are the most important factors.  *See Soto v. Comm'r of

Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *3 (E.D.N.Y. Sept. 30, 2020).  Consistency

refers to "the extent to which an opinion or finding is consistent with evidence from other

16

medical sources and non-medical sources." *Mark V. v. Comm'r of Soc. Sec.*, No. 21-CV-10123, 2023 WL 2662678, at *3 (S.D.N.Y. Mar. 27, 2023) (internal quotation marks and citation omitted); *see* 20 C.F.R. § 416.920c(c)(2).  The "more consistent a medical opinion . . . [is with] evidence from other medical sources and nonmedical sources . . . the more persuasive the medical opinion" will be.  *See* 20 C.F.R. § 404.1520c(c)(2).  Supportability refers to "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Mark V.*, 2023 WL 2662678, at *3 (internal quotation marks and citation omitted).

Notwithstanding the change in the governing regulations for consideration of medical opinion evidence, "[a] survey of . . . cases . . . show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar." *Ting v. Comm'r of Soc. Sec.*, No. 23-CV-1241, 2024 WL 815841, at *7 n.12 (E.D.N.Y. Feb. 27, 2024) (quoting *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted*, 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022)); *see Jackson*, 588 F. Supp. 3d at 579 ("Courts considering the application of the new regulations have concluded that the factors are very similar to the analysis under the old treating physician rule.") (internal quotation marks and citation omitted).  Indeed, "the regulations still recognize the 'foundational nature' of the observations of treating sources, and consistency with those observations is a factor in determining the value of any [treating source's] opinion." *Soto*, 2020 WL 5820566, at *4 (alterations in original, internal quotation marks and citation omitted); *see Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018) ("[Examining physicians'] observations about an applicant's mental and physical condition are

the first building block in the disability determination.").  "[B]ecause a treating source examines

a claimant directly, they 'may have a better understanding of [a claimant's] impairment(s) . . .

than if the medical source only reviews evidence in [a claimant's] folder.'"  *Soto*, 2020 WL

5820566, at *4 (quoting 20 C.F.R. § 404.1520c(c)(3)(v)) (alteration in original).

Here, the ALJ rejected Dr. Wilen's opinion as inconsistent with the record largely on two

grounds:  (1) Dr. Wilen's opinion is not supported by "significant physical examination findings

or neurologic deficits"; and (2) Dr. Wilen "has not performed surgery on the claimant, and that

the claimant has not required hospital admissions or emergency room visits."  *Id.* at 19.

Even though plaintiff suffered from multiple issues of discogenic disease shown by the

objective medical evidence, the ALJ discounted Dr. Wilen's opinion because Dr. Wilen did "not

have significant physical examination findings or neurologic deficits."  Tr. at 18-19.  As the

Commissioner recognizes, "Dr. Wilen's notes only confirm examination of Plaintiff's range of

spinal motion, spinal tenderness, and hip strength."  Def. Mem. at 15.  However, to the extent

that the ALJ determined that Dr. Wilen's treatment records provided an inadequate foundation

for the doctor's RFC assessment, the ALJ was obligated to seek to develop further the

administrative record by contacting Dr. Wilen.[9]  *See Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.

1999) ("an ALJ cannot reject a treating physician's diagnosis without first attempting to fill any

clear gaps in the administrative record"); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *Acosta

Cuevas*, 2021 WL 363682, at *13 ("Notwithstanding that the record had an obvious gap, the ALJ

nonetheless chose to reject a medical diagnosis from a specialist that Plaintiff had a significant

medical history with, including receiving nerve-pain medication, instead of seeking more

information."); *Calzada v. Astrue*, 753 F. Supp. 2d 250, 259 (S.D.N.Y. 2010) ("If a physician's

---

[9] Further, there is no evidence that the ALJ contacted plaintiff's primary care doctor who had prescribed oxycontin.

finding in a report is believed to be insufficiently explained [or] lacking in support, the ALJ must seek clarification and additional information from the physician.").  In fact, "an ALJ's duty to develop the record takes on heightened importance with respect to a claimant's treating medical sources, because those sources 'are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.'"  *Jackson*, 588 F. Supp. 3d at 583 (quoting *Acosta Cuevas*, 2021 WL 363682, at \*11).  Here, the ALJ made no attempt to contact Dr. Wilen and thus did not fulfil his duty to develop the record.  *See Acosta Cuevas*, 2021 WL 363682, at \*13.

Moreover, the ALJ could have requested another consultative examination by an orthopedist or a neurologist.  This approach is particularly appropriate here since the ALJ found that the physical examination findings of the internal medicine consultative examiner were contrary to the objective medical evidence.  *See* Tr. at 18.  In fact, during the hearing, plaintiff's counsel suggested that the ALJ order a new examination because the opinion of Dr. Aguiar, the consultative examiner, was contrary to the record.  *See id.* at 46.  Although the ALJ stated that he would take that request "under advisement," he apparently did not order another examination. *See id.* at 47.  Having discounted the opinions of the treating orthopedist, the consulting examiner and two state agency reviewing physicians, the ALJ was left with an insufficient medical basis to make a determination of plaintiff's RFC.  *See Fintz v. Kijakazi*, No. 22-CV-337, 2023 WL 2974132, at \*7 (E.D.N.Y. Apr. 15, 2023) (finding ALJ failed to develop the record where consultative examiner's opinion "had serious deficiencies" and non-examining expert's opinions were vague).  As the Commissioner acknowledges, other than Dr. Aguiar's rejected

19

examination, "Dr. Wilen's partial examinations," and the MRI and EMG testing, "the record
included no other medical evidence for [Dr. Stearns] to review or rely on."  Def. Mem. at 16.
The Commissioner correctly notes that "Dr. Wilen's notes never indicate any abnormalities of
gait or stance, positive straight leg raise tests, . . . or reduced sensation or reflexes.  *See* Def.
Mem. at 16-17.  However, the Commissioner only underscores the gap in Dr. Wilen's records to
address these salient factors.  The absence of notes regarding those issues does not mean that
plaintiff presented normally or that related symptoms were absent.  In *Rosa v. Callahan*, 168
F.3d 72 (2d Cir. 1999), the Second Circuit found that the ALJ failed to fill gaps where:  (1) the
treating physician's "assessment was only one page in length and, as the ALJ recognized, wholly
conclusory[;]" and (2) it was "entirely possible that [the treating physician], '[i]f asked,' could
have provided a sufficient explanation for any seeming lack of support for his ultimate diagnosis
of complete disability."  *Rosa*, 168 F.3d at 80 (citations omitted).  Similarly, here, rather than
fully develop the record, the ALJ improperly filled the gap by substituting his own medical
opinions for those of plaintiff's treating physician.  *See Jackson*, 588 F. Supp. 3d at 585, 588 (in
the absence of functional assessment, "the RFC is instead largely supported by the ALJ's own
interpretation of the medical records and treatment notes in this case").

In finding Dr. Wilen's opinion unpersuasive, the ALJ relied on the fact that plaintiff has
not required surgery, hospital admissions or emergency room visits.  Tr. at 19.  It is well
established that a treating doctor's non-surgical or otherwise conservative treatment does not
constitute substantial evidence.  *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (ALJ
could not discount opinion of treating physician "merely because he has recommended a
conservative treatment regimen"); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (reversing
finding that "recommend[ation] of only conservative physical therapy, hot packs, EMG testing –

not surgery or prescription drugs – was substantial evidence that [the claimant] was not physically disabled"). The Commissioner may not impose his "notion that the severity of a physical impairment directly correlates with the intrusiveness of the medical treatment ordered." *Shaw*, 221 F.3d at 134-35; *see Ayala*, 2024 WL 1174286, at *9 (criticizing ALJ for "plac[ing] significant weight" on fact that plaintiff did not "receive aggressive treatment"). In any event, plaintiff was prescribed oxycodone (three times daily) for pain, underwent physical therapy, received at least one steroid injection and contemplated having back surgery. These treatments are not fairly considered conservative. *See Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 249-50 (E.D.N.Y. 2020) (finding incorrect as a matter of law, ALJ assessment of prescription drugs, physical therapy, and steroid injections as conservative). Therefore, it was error for the ALJ to conclude that plaintiff's course of treatment was inconsistent with Dr. Wilen's RFC opinion.

Moreover, it was error for the ALJ to find that Dr. Wilen's opinion was inconsistent "with the balance of the record." Tr. at 18-19. On the contrary, Dr. Wilen's opinion was consistent with plaintiff's MRIs and EMG testing, as well as plaintiff's hearing testimony. *See Ting*, 2024 WL 815841, at *8 (finding ALJ's rejection of treating doctor's opinion not supported by substantial evidence where treating doctor's opinion was consistent with MRIs and plaintiff's testimony). Plaintiff testified that he did not perform household chores, that his wife usually drives and that he does not take public transportation by himself. Plaintiff further testified that he could not turn his head fully, walk more than two to three short city blocks, and could not sit for two hours while watching a movie. Dr. Wilen's opinion recognizes these limitations. *See Soto*, 2020 WL 5820566, at *10 (finding that ALJ erred "by not factoring in [plaintiff's] statements when rejecting [treating doctor's] assessment of plaintiff's abilities").

Dr. Wilen's opinion was further supported by the objective results of MRI and EMG

testing.  *See Gabriel v. Comm'r of Soc. Sec.*, No. 21-CV-1508, 2024 WL 653443, at *1 (E.D.N.Y. Feb. 16, 2024) ("MRI evidence and clinical examinations showed significant abnormalities and provide support for [treating physician's] conclusion that [plaintiff] is unable to work").  For example, the MRIs showed multiple disc herniations, disc bulges, neural foraminal narrowing and cervical and lumbar spine straightening.  Tr. at 15-16; *see also Ayala*, 2024 WL 1174286, at *9 (finding that MRI results showing disc herniation and bulging supported treating practitioner's opinions that plaintiff was disabled).  Indeed, the ALJ recognized that "[t]here is some support for [the] limitations [prescribed in Dr. Wilen's opinion] in the objective evidence, including abnormal diagnostic imaging and electrodiagnostic testing."  Tr. at 18.

Further, although the ALJ recognized that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the ALJ discounted plaintiff's testimony concerning the intensity and limiting effects of those symptoms.  *Id.* at 16-17.  "While an ALJ is not required to credit [a plaintiff's] testimony about the severity of [his] pain and the functional limitations it causes, the ALJ does not have unbounded discretion in choosing to reject it; instead, the ALJ must determine whether a Plaintiff's statements as to his pain and limitations are consistent with the medical evidence."  *Ting*, 2024 WL 815841, at *8 n.14 (internal quotation marks and citation omitted).

For the same reasons that the ALJ rejected Dr. Wilen's opinion, the ALJ also found that plaintiff's testimony conflicted with "the lack of significant gait or motor function abnormalities, as well as routine and conservative course of treatment and medication regimen."  Tr. at 17.  However, the ALJ failed to give sufficient weight to the fact that plaintiff's testimony was corroborated by the objective medical evidence of multiple levels of disc disease, as well as Dr.

Wilen's opinion.  *See Gabriel*, 2024 WL 653443, at *2 (based on treating doctor's opinion and MRI evidence, "there appears to be a basis for subjective complaints"); *Ting*, 2024 WL 815841, at *8 n.14 ("physical limitations that Plaintiff testified to are consistent with the medical and other evidence regarding his condition"); *Scognamiglio*, 432 F. Supp. 3d at 251-52 (ALJ failed to consider "whether a plaintiff's statements as to her pain are consistent with the objective medical evidence"); *Soto*, 2020 WL 5820566, at *10 (finding that ALJ erred in analysis of plaintiff's subjective statements, which were "consistent with the medical and other evidence").  In addition, the ALJ should have given plaintiff's work history greater consideration in evaluating his credibility.  *See Mark V.*, 2023 WL 2662678, at *8.  For the reasons discussed above, it was similarly improper for the ALJ to weigh heavily plaintiff's conservative treatment against his subjective testimony.  Thus, the ALJ erred in evaluating plaintiff's credibility.[10]

## B.    The ALJ erred in giving too much weight to the opinion of Dr. Stearns

The ALJ further erred by giving undue weight to the conclusory opinions of Dr. Stearns, who responded to the ALJ's post-hearing interrogatories, but did not examine plaintiff.

First, Dr. Stearns' opinion cannot constitute substantial evidence because Dr. Stearns relied on the discredited examination conducted by Dr. Aguiar on September 9, 2021.  Tr. at 434 ("[t]he only thorough examination on 9/9/2021 revealed . . .").  Although Dr. Stearns recognized that plaintiff had "significant degenerative disc changes with multilevel foraminal stenosis" and "moderate risk of developing radicular symptoms," Dr. Stearns relied on Dr. Aguiar's absence of clinical findings on examination.[11]  *Id.* at 435.  Thus, on the one hand, the ALJ rejected Dr.

---

[10] The ALJ's doubts about plaintiff's credibility provides another reason why he should have ordered a further consultative examination to evaluate plaintiff's gait and motor function.

[11] Notably, Dr. Wilen is an orthopedist, while Dr. Aguiar is an internist.  *See Mark V.*, 2023 WL 2662678, at *6; 20 C.F.R. § 404.1520c ("The medical opinion . . . of a medical source who has received advanced education and training to become a specialist may be more persuasive about medical issues related to his or her area of specialty than the medical opinion . . . of a medical source who is not a specialist in the relevant area of specialty.").

Aguiar's physical examination findings (*id.* at 18), but then adopted Dr. Stearns' opinion (*id.* at 19), which relied exclusively on Dr. Aguiar's examination for physical examination findings (*id.* at 434). The Commissioner argues that even if "Dr. Aguilar's [sic] opinion was [not] persuasive, [her] examination was thorough." Def. Mem. at 15. But, having rejected the results of Dr. Aguiar's "one-time examination," the ALJ cannot then indirectly rely on that same examination as the basis for his opinion. *See Ting*, 2024 WL 815841, at *9 (ALJ cannot "cherry-pick" evidence to support ALJ's conclusions); *Hahn v. Saul*, No. 20-CV-6124, 2023 WL 4975970, at *7 (E.D.N.Y. Aug. 3, 2023) (ALJ improperly "cherry-pick[ed] findings from [] consultative examination despite contradictory findings from at least five other medical sources"); *Scognamiglio*, 432 F. Supp. 3d at 251 (non-examining expert's opinion "should not be afforded greater weight for its consistency with records that the Court has already deemed undeserving of such weight"). In fact, the ALJ rejected the opinion of Dr. Powell for "cit[ing] heavily to the Dr. Aguiar consultative examination, which . . . gives conclusions that are not consistent with or supported by the record as a whole." Tr. at 18. The ALJ erred by failing to reject Dr. Stearns' opinion for the same reason.

In addition, as applied to the facts of this case, the opinion of Dr. Stearns (a non-examining expert), standing alone, does not constitute substantial evidence. *See Ting*, 2024 WL 815841, at *8 ("courts ordinarily find that RFC determinations that depend entirely on the opinions of non-examining experts and one-time consultative examiners are not supported by substantial evidence"); *Fintz*, 2023 WL 2974132, at *6 ("The opinion of a non-examining physician . . . should not be heavily relied upon by an ALJ."); *Lewis v. Saul*, No. 21-CV-1493, 2022 WL 4586241, at *9 (E.D.N.Y. Sept. 29, 2022); *Hahn*, 2023 WL 4975970, at *6 n.2 ("if no physical examination of the plaintiff is performed, the consultative opinions are entitled to little

24

if any weight"); *Avila v. Comm'r of Soc. Sec.*, No. 20-CV-1360, 2021 WL 3774317, at *20

(S.D.N.Y. Aug. 9, 2021), *report and recommendation adopted*, 2021 WL 37741898 (S.D.N.Y.

Aug. 25, 2021).  Here, the ALJ relied entirely on Dr. Stearns' opinion and "incorporated the

specific limitations proposed by Dr. Stearns into the [RFC]."  Tr. at 19.  As noted above, despite

the new regulations replacing the "treating physician rule," the Commissioner must still

recognize the importance of the opinion of a treating physician who has had the opportunity to

observe plaintiff over an extended period of time, as well as see how plaintiff has responded to

ongoing treatment.  *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v).  To be sure, under the new

regulations, no special deference is given to the opinion of the treating physician.  *See* 20 C.F.R.

§ 404.1520c.  However, here, Dr. Wilen had seen plaintiff for over one and a half years since the

onset date and for more than ten years for various injuries, affording him a larger context in

which to evaluate plaintiff's impairments.  *See* 20 C.F.R. § 404.1520c(c)(3)(i)-(v).  However,

the ALJ credited Dr. Stearns' cursory analysis with little discussion of plaintiff's medical history

or how Dr. Stearns' opinion is "supported" by the record or "consistent" with the other evidence.

The ALJ cherry picked statements from the medical records that supported his conclusion

without regard to the opinion of Dr. Wilen.  It was improper for the ALJ to discount plaintiff's

treating physician's opinion in favor of that of Dr. Stearns, who never examined plaintiff, and

Dr. Aguiar, who conducted only a single examination of plaintiff and whose opinion the ALJ

otherwise rejected.  *See Ting*, 2024 WL 815841, at *8; *Hahn*, 2023 WL 4975970, at *6 (ordering

remand where ALJ cherry picked findings of consultative examiner despite contrary findings

from treating doctors); *Acosta Cuevas*, 2021 WL 363682, at *13, *16 (recommending remand

where ALJ rejected opinion of long-time treating specialist in favor of one-time examination);

*Soto*, 2020 WL 5820566, at *7-*8 (ordering remand where ALJ credited non-examining expert

over treating physician's opinion).

Moreover, under the new regulations, the ALJ must "specifically" explain "how well a medical source supports [his] own opinion and how consistent a medical source opinion is with the medical evidence as a whole." *Jackson*, 588 F. Supp. 3d at 585-86.  It is not sufficient to vaguely refer to "objective medical evidence in the record" or simply conclude that an opinion is "consistent with other evidence in the file." *Id.* at 585.  Here, the ALJ failed to explain adequately his findings.  In conclusory terms, the ALJ found that "the opinion of Dr. Stearns is persuasive because it is consistent with and supported by the evidence of record." Tr. at 19.  This is insufficient to satisfy the consistency and supportability factors. *See Jackson*, 588 F. Supp.3d at 585.

In sum, the Court concludes that the ALJ's decision was not supported by substantial evidence.

## Conclusion

For the reasons stated above, this Court grants plaintiff's motion for judgment on the pleadings and denies the Commissioner's cross-motion.  The Commissioner's decision is vacated and this action is remanded for further consideration pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**SO ORDERED**

Dated: Brooklyn, New York
         March 31, 2024

                              s/ James R. Cho
                              James R. Cho
                              United States Magistrate Judge

26